

1  STEPHEN L. JOSEPH (SBN 189234)
   P.O. Box 221
2  Tiburon, CA 94920-0221
3  Telephone: 415-577-6660
   Facsimile: 415-869-5380
4  E-mail: sljoseph@earthlink.net

5  Attorney for Plaintiff ALTIN HAVAYOLU
6  TASIMACILIGI TURIZM VE TIC. A.S.

7                                                    E-filing

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**        ***EDL***

10                  **SAN FRANCISCO DIVISION**

11  ALTIN HAVAYOLU TASIMACILIGI          ) Case No.
12  TURIZM VE TIC. A.S., a corporation   ) **CV 07      6475**
    organized under the laws of Turkey,  )
13  doing business as GOLDEN INTERNATIONAL ) **VERIFIED COMPLAINT FOR DAMAGES**
14  AIRLINES,                            )
                                         )
15              Plaintiff,               ) **DEMAND FOR JURY TRIAL**
                                         )
16  vs.                                  )
                                         )
17  SIVAKUMAR SINNARAJAH, an individual, )
18  also known as MANO SINNARAJAH; H&S   )
    GROUP OF COMPANIES, INC., a Florida  )
19  corporation; and DOES 1 to 10 inclusive, )
                                         )
20              Defendants.              )
21  _____ )

22                  **JURISDICTION**

23  1.   This court has jurisdiction over this action pursuant to 28 U.S.C. §1332. There is
24       complete diversity of citizenship between Plaintiff and Defendants and the amount in
25       controversy exceeds $75,000, exclusive of interest and costs.

26  2.   Plaintiff is a corporation organized under the laws of Turkey. Its principal place of
27       business is in Turkey. It is an airline and aircraft operating company doing business
28       under the name of "Golden International Airlines."

                          1

1
2
3
4

3.   Upon information and belief, Defendant SIVAKUMAR SINNARAJAH (hereinafter "SINNARAJAH") is a citizen of Sri Lanka and the United States and is domiciled in Florida. At all times relevant hereto, he was the President, Chief Executive Officer and a director of Defendant H&S GROUP OF COMPANIES, INC. (hereinafter "H&S").

5

4.   H&S is organized under the laws of the State of Florida.

6
7
8
9
10
11
12
13
14
15

5.   This case concerns an "Aircraft Lease Agreement" between Plaintiff and H&S dated October 17, 2007 (hereinafter the "Lease"). In the Lease, H&S represented and warranted that it is "a corporation duly incorporated, validly existing and in good standing under the Laws of the State of California." By filing this action in this Court, Plaintiff is enforcing the warranty in the Lease that H&S is a California corporation. The Lease further provides that California law and Florida law are applicable to the transaction and that litigation may be filed in any "appropriate jurisdiction." The Lease contemplates a "judgment given by United States or California courts." Based on the foregoing, H&S submitted to the personal jurisdiction of the California courts and this Court is a proper venue for this action under 28 U.S.C. §1391.

16
17
18
19

6.   This case also concerns a "Side Letter" between Plaintiff and H&S dated October 17, 2007. The Side Letter modifies the Lease, but leaves unchanged all of the provisions referenced in paragraph 5 above which are fully applicable to and incorporated in the Side Letter.

20

7.   SINNARAJAH signed the Lease and the Side Letter on behalf of H&S.

21
22
23
24
25
26

8.   Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10 inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of such fictitiously named Defendants when the same have been ascertained. For convenience, each allegation regarding SINNARAJAH and H&S applies to DOE Defendants 1 through 10.

27
28

9.   Plaintiff expects to name T. Balan, a director of H&S, as a Defendant. Plaintiff also expects to name SINNARAJAH's wife, Harija Sinnarajah, as a Defendant. Plaintiff will

1    make the determination whether to name one or both them as Defendants when further

2    information has been obtained, including in the course of discovery in this case.

3    10.  Plaintiff is informed and believes and based thereon alleges that each of the fictitiously

4    named Defendants and T. Balan and Harija Sinnarajah are responsible in some manner

5    for the occurrences, acts and omissions alleged herein and that Plaintiff's damages have

6    been, and will be, proximately caused by their conduct.

7    11.  Plaintiff is informed and believes, and on that basis alleges, that Defendants, and each of

8    them, were the agents, employees, partners, joint venturers, co-conspirators, owners,

9    principals, and/or employers of the remaining Defendants, and each of them, and are,

10    and at all times mentioned herein were, acting within the course and scope of that

11    agency, employment, partnership, joint venture, conspiracy, or ownership.

12    12.  Plaintiff is informed and believes, and on that basis alleges, that the acts and conduct

13    alleged herein were known to, authorized, approved and ratified by, the officers,

14    directors, and managing agents of H&S and any other Defendant corporations.

15    ## STATEMENT OF FACTS

16    ### The LOI and the personal guarantee

17    13.  Plaintiff and H&S executed a "Proposal" dated July 18, 2007 for the lease by H&S to

18    Plaintiff of a particular Boeing 757-200 aircraft, Manufacturer's Serial Number 28424

19    (hereinafter the "Subject Aircraft"). In the Proposal, the parties agreed to negotiate in

20    good faith towards the prompt execution of the lease. The parties subsequently referred

21    to the signed Proposal as the "LOI" and it is referred to as the "LOI" herein.

22    14.  In the LOI, Plaintiff agreed to pay a refundable deposit to H&S in the amount of Two

23    Hundred Eighty Thousand Dollars ($280,000). The LOI stated that the payment had to

24    be made to an account in Sri Lanka.

25    15.  On or about July 20, 2007, SINNARAJAH signed a letter in which he personally

26    guaranteed the performance of the LOI by H&S, including the obligation to refund the

27    full $280,000 if the lease transaction was not consummated.

28

1

**The July 25, 2007 e-mail and payment of the deposit**

2  16.  On or about July 25, 2007, SINNARAJAH sent an e-mail to Plaintiff asking for

3        payment of the $280,000 deposit, stating in relevant part as follows:

4            "You have to understand that I am not like other people which you

5            have experienced with, You have come to my House and seen your

6            self about my status.  we are clearly stated on the LOI,In the event If

7            I do not Deliver the Aircraft to Golden Internaional airlines, Monies

8            will be Refunded. I am not going to run away with your deposit…. I

9            have to put the money tomorrow other wise I can not promise the

10           Aircraft." [Errors in original.]

11                          **The Lease and the Side Letter**

12  17.  On or about October 17, 2007 Plaintiff and H&S contemporaneously executed two

13        documents: the "Aircraft Lease Agreement" (the "Lease") and the "Side Letter."

14  18.  In the Lease, H&S agreed to lease the Subject Aircraft to Plaintiff for five years, with

15        Plaintiff having an option to extend for another two years.

16  19.  As H&S still had possession of the $280,000 deposit, Plaintiff and H&S agreed as

17        follows in the Side Letter:

18           "The aforesaid contract [i.e. the Lease] is subject to the Lessor [i.e.

19           H&S] purchasing the [Subject Aircraft] from Deutsche Bank on

20           terms and conditions satisfactory to the parties, or another similar

21           aircraft acceptable to Lessees [i.e. Plaintiff], on or before October

22           31, 2007. In the event an aircraft suitable to Lessees is not acquired

23           before the aforesaid date, the agreement between the parties shall be

24           considered null and void and the parties released from any and all

25           obligations to each other and the deposit return [sic] to Lessee

26           within 7 days thereafter."

27  20.  The Lease provides that "time is of the essence in the performance of all obligations"

28        and "consequently, all time limitations set forth in the provisions of this Lease will be

4

1    strictly observed." The time is of the essence clause is applicable to the Side Letter.

2                **H&S failed to purchase the Subject Aircraft from Deutsche Bank**

3    21.    H&S never did purchase the Subject Aircraft from Deutsche Bank, because it did not

4           have the assets or financial ability to purchase it. Deutsche Bank sold the Subject

5           Aircraft to another unrelated buyer. Plaintiff does not know the date of such sale.

6    22.    H&S never offered another aircraft acceptable to Plaintiff.

7                           **The filing of the H&S reinstatement**

8    23.    H&S was a suspended corporation at the time that it executed the Lease on October 17,

9           2007 as it had failed to follow corporate formalities.

10   24.    On or about October 29, 2007, Plaintiff reinstated the corporation with the intent of

11          using the corporate shell to avoid returning the deposit which would be due and payable

12          after October 31, 2007.

13                           **Demands for refund of the deposit**

14   25.    After the deadline expired, Plaintiff sent four written demands for the return of the

15          $280,000 deposit.

16   26.    The first demand for the return of the deposit was made by Plaintiff by e-mail as soon as

17          the October 31, 2007 deadline expired.

18   27.    The second demand for the return of the deposit was made by Plaintiff's Istanbul-based

19          lawyer, Victor Stein, by e-mail on or about November 7, 2007.

20   28.    In response to the second demand, SINNARAJAH sent an e-mail to Stein stating as

21          follows:

22                 "I have given you the Alternate Aircraft and We have committed to

23                 golden Airline Before 30th of Dec the Aircraft. I have sing the LOI

24                 for the 1999 aircraft and we have spent lot of money on this

25                 Transaction. My commitment is to deliver the aircraft. Please wait

26                 until I finished my Delivery commitment." [Errors in original.]

27   29.    SINNARAJAH was thereby refusing to return the deposit.

28   30.    The third demand for the return of the deposit was made by undersigned counsel by fax

1    and e-mail on or about November 21, 2007. Plaintiff's counsel, Stephen Joseph, stated

2    that the October 31, 2007 deadline had passed, the Lease was null and void, and the full

3    $280,000 deposit must be returned.

4    31.    In response to the third demand, SINNARAJAH's and H&S's former counsel, Jerry

5    Dale, telephoned Joseph on or about November 26, 2007 and read to him an e-mail that

6    he had received from SINNARAJAH who Dale said was in Sri Lanka:

7    "I have told Cpt that we are in the process of finalizing with the

8    bank and I have signed the MOU with the owner and I am expecting

9    returned signed document at any time. We have committed the

10    money to put into this aircraft. As I promised them, the aircraft will

11    be delivered before 30th December. Airline Operating Certificate is

12    not my problem. My aircraft delivery is not to do with their

13    operation. Please inform their attorney the progress."

14    32.    SINNARAJAH was thereby again refusing to return the deposit.

15    33.    The fourth demand was made by Stephen Joseph by fax and e-mail on or about

16    November 27, 2007. In the demand, Stephen Joseph stated as follows:

17    "Golden has never indicated any interest in any aircraft that may be

18    offered by you (or H&S) after the expiration of the October 31, 2007

19    deadline. Golden has repeatedly and consistently demanded the

20    return of the deposit since that time and confirmed that the

21    agreement is null and void. In response to Golden's clear demand,

22    you refer to a deal of some sort that you claim that you are putting

23    together for an unidentified aircraft. Golden has no idea what you

24    are talking about.

25    Golden will not do business with you (or H&S) under any

26    circumstances whatsoever. If you (or H&S) are working on some

27    kind of deal that you believe would be of interest to Golden, you

28    should abandon it immediately."

34.   Stephen Joseph stated in the demand that if the deposit was not received in Joseph's trust account by December 4, 2007, he would assume that SINNARAJAH had no intention of returning the deposit.

35.   SINNARAJAH has not responded to the November 27, 2007 demand.

36.   SINNARAJAH has not returned the deposit.

## FRAUD ALLEGATIONS

### The fraud perpetrated to obtain the $280,000 deposit

37.   SINNARAJAH and H&S made fraudulent misrepresentations to induce Plaintiff to pay the $280,000 to his (or H&S's) account in Sri Lanka. Said fraudulent representations were as follows:

   a. Prior to the execution of the LOI in July 2007, SINNARAHAH had shown Plaintiff's employees his expensive house and made representations to them that he had substantial wealth, financial wherewithal, and status. In the July 25, 2007 e-mail, SINNARAJAH mentioned his house and his status as a reason that Plaintiff should trust him to return the deposit if the transaction was not consummated. As a result, Plaintiff's employees believed that SINNARAJAH's personal guarantee was valuable in that it was supported by his supposed substantial net worth and status. In fact, SINNARAJAH knew at the time that he had little or no net worth and his show of wealth was a sham and a fraud.

   b. SINNARAJAH's promise in his July 25, 2007 e-mail to lease the Subject Aircraft to Plaintiff if the deposit was made. In fact, SINNARAJAH never intended to lease the Subject Aircraft to Plaintiff, because he knew that he did not have the assets or financial ability to purchase the Subject Aircraft from Deutsche Bank.

   c. SINNARAJAH's promise in his July 25, 2007 e-mail not to "run away" with the deposit. In fact, SINNARAJAH always intended to run away with the deposit, as evidenced by his present and continuing refusal to refund the deposit.

   d. SINNARAJAH's promise in his July 25, 2007 e-mail to return the deposit if the

7

1    transaction was not consummated. In fact, SINNARAJAH never intended to

2    refund the deposit if the transaction was not consummated, as evidenced by his

3    present and continuing refusal to refund the deposit.

4    e. SINNARAJAH's personal guarantee in the July 20, 2007 letter. In fact,

5    SINNARAJAH knew that his personal guarantee was worthless as he had little

6    or no net worth.

7   38.    SINNARAJAH and H&S made the foregoing representations with intent to fraudulently

8    induce Plaintiff into paying the $280,000 deposit.

9   39.    Plaintiff reasonably and justifiably relied upon the foregoing representations in deciding

10    to pay the $280,000 deposit.

11    **The fraud at the October 17, 2007 meeting**

12   40.    On October 17, 2007, a meeting was held at the Law Offices of Jerry M. Dale in Miami,

13    Florida between SINNARAHAH and the following representatives of Plaintiff: Captain

14    Ahmet Guler, Nurullah Bilgen, and Serhan Ozsoysal (hereinafter the "October 17

15    Meeting").

16   41.    Jerry Dale was SINNARAJAH's and H&S's counsel and he was also participated in the

17    October 17 Meeting.

18   42.    In conversations prior to the October 17 Meeting, and again in the conversations at the

19    October 17 Meeting before signing the Lease or Side Letter, Plaintiff informed

20    SINNARAJAH as follows:

21    a. The Subject Aircraft was required by Plaintiff to conduct flights for Air India.

22    b. Plaintiff would have to pay financial compensation if it failed to perform its

23    contract with Air India or if there was any delay.

24    c. The Turkish civil aviation authority would suspend Plaintiff's license if it did not

25    lease the Subject Aircraft.

26    d. Timing was critical. Plaintiff needed to obtain the Subject Aircraft under lease as

27    soon as possible to avoid paying financial compensation to Air India and having

28    its license suspended. Plaintiff could not tolerate any further delay.

8

43. The representations by Plaintiff to SINNARAJAH alleged in paragraph 42 were true.

44. At the October 17 Meeting, before Plaintiff signed the Lease and the Side Letter, SINNARAJAH represented to Plaintiff's representatives as follows:

   a. Referring to the Subject Aircraft, he said "I own it."

   b. He said that he had already paid $3.2 million to Deutsche Bank from his own funds as part of a $5 million down payment.

   c. He said that a Kuwaiti financier was sending or had already sent the remaining $1.8 million of the down payment to Deutsche Bank.

   d. He said that when the full down payment was received by Deutsche Bank, title would be transferred to him.

45. Plaintiff believed that of the representations made by SINNARAJAH alleged in paragraph 44 above were true.

46. In fact, all of the representations made by SINNARAJAH alleged in paragraph 44 above were untrue when made and remained untrue thereafter and SINNARAJAH knew they were untrue when made.

47. On November 20, 2007, Robert Agnew of Morten Beyer & Agnew, which was the agent for Deutsche Bank in dealing with SINNARAJAH, informed Plaintiff's counsel, Stephen Joseph, by telephone as follows:

   a. "SINNARAJAH never got anywhere with it."

   b. "He kept giving us documents that seemed to be unrelated."

   c. "He said he was going to have a group buy the aircraft and lease it to Golden so they could provide subservice to an Indian airline I think."

   d. "We sent him a draft LOI."

   e. "He gave us a couple of different investors in Kuwait if I recall."

   f. "He gave the name of a company in Kuwait. He sent us a piece of paper dated June of 06 about the value of a sheik or someone. We never verified if the agreement was signed. We never got a level of comfort that we knew that there was money."

9

1
2

     g.  "He then said he was going to bring the investors over there so we could cut a deal. But it never happened."

3

     h.  "We sold it [to another customer]."

4  48. SINNARAJAH made the representations alleged in paragraph 44 above to fraudulently
5  induce Plaintiff into signing the Lease and the Side Letter.

6  49. Plaintiff would not have executed the Lease or the Side Letter and would there and then
7  at the October 17 Meeting have firmly demanded the immediate return of the $280,000
8  deposit if it had known that any of the representations alleged in paragraph 44 above
9  were untrue.

10  50. Plaintiff would not have executed the Lease or the Side Letter and would there and then
11  at the October 17 Meeting have firmly demanded the immediate return of the $280,000
12  deposit if it had known the facts that Robert Agnew informed Stephen Joseph about
13  alleged in paragraph 46 above.

14  51. In reasonable and justified reliance on the representations alleged in paragraph 44
15  above, Plaintiff executed the Lease and the Side Letter at the October 17 meeting and
16  did not demand the immediate return of the deposit.

17  52. When executing the Lease and the Side Letter, Plaintiff believed, based on the
18  representations in paragraph 44, that the transfer of title to SINNARAJAH or H&S was
19  imminent and that continuing to work with SINNARAJAH represented the best and
20  fastest means of obtaining a suitable aircraft.

21  53. SINNARAJAH executed the Lease and the Side Letter at the October 17 Meeting.

22  54. At the time of the execution of the Lease, SINNARAJAH and H&S knew that they
23  could not perform it and did not intend to perform it. Entering into the Lease without the
24  ability or intention to perform it was a fraud upon Plaintiff.

25  **RESPONDEAT SUPERIOR**

26  55. In doing the things described herein, SINNARAJAH was acting within the scope of his
27  authority as an officer and director of H&S. Therefore, H&S is jointly and severally
28  liable for the acts of SINNARAJAH under the doctrine of *respondeat superior*.

**PERSONAL GUARANTEE**

56.   SINNARAJAH is jointly and severally liable to Plaintiff for the losses and injuries alleged herein under the personal guarantee executed on or about July 20, 2007.

**ALTER EGO ALLEGATIONS**

57.   At all times mentioned herein, there was complete unity of interest and ownership between SINNARAJAH and H&S such that they were indistinguishable from each other.

58.   At all times mentioned herein, SINNARAJAH totally dominated and controlled H&S in all respects.

59.   At all times mentioned herein, SINNARAJAH treated H&S's assets as his own.

60.   H&S was and remains a sham corporation.

61.   At all times mentioned herein, H&S failed to follow corporate formalities. Despite representing and warranting in the Lease that it was a corporation in good standing, H&S had been suspended by the Florida Division of Corporations at the time the Lease and the Side Letter were executed.

62.   At all times mentioned herein, H&S was grossly undercapitalized with respect to the obligations that it was undertaking in the LOI, the Lease and the Side Letter. In the Lease, H&S agreed to lease the Subject Aircraft. However, H&S did not own the Subject Aircraft and therefore was unable to lease it to Plaintiff unless it first purchased it. H&S did not have sufficient capitalization to purchase it.

63.   At all times mentioned herein, SINNARAJAH used H&S as an instrument to defraud Plaintiff to steal the $280,000 deposit and avoid personal liability for fraud, believing that he could hide behind the corporate veil in the event of litigation.

64.   It would be patently unfair and a miscarriage of justice to allow SINNARAJAH to keep the deposit and avoid personal liability by permitting him to interpose an insolvent corporation to prevent collection.

65.   The Court is requested to pierce the corporate veil and hold SINNARAJAH jointly and severally liable to Plaintiff.

1    <u>**ATTORNEY'S FEES AND INTEREST**</u>

2    66.    The Lease provides as follows:

3            "If any legal action or other proceeding is brought in connection

4            with or arises out of any provisions in this Lease, the prevailing

5            party will be entitled to recover reasonable attorneys' fees and other

6            costs incurred in such action or proceedings. The prevailing party

7            will also, to the extent permissible by Law, be entitled to receive

8            pre- and post-judgment Default Interest."

9    <u>**NATURE OF ACTION**</u>

10   67.    This action is commercial in nature. It is not based on a retail installment sales contract,

11          and is not subject to the provisions of California Civil Code §1812.10 and/or §2984.4.

12   <u>**FIRST CLAIM FOR RELIEF**</u>

13   <u>**BREACH OF CONTRACT**</u>

14   [AGAINST SINNARAJAH AND H&S]

15   68.    Plaintiff realleges and incorporates by reference herein all of the allegations in the

16          preceding paragraphs as though set forth in full herein.

17   69.    SINNARAJAH's and H&S's failure and refusal to refund the $280,000 deposit, as

18          alleged above, constitutes breach of the Side Lease.

19   70.    SINNARAJAH and H&S are jointly and severally liable to Plaintiff for breach of

20          contract.

21   71.    As a direct and proximate result of said breach of contract, Plaintiff has suffered the loss

22          of the $280,000 deposit.

23   72.    Plaintiff did not cause or contribute by act or omission to the injuries or losses alleged

24          herein.

25   <u>**SECOND CLAIM FOR RELIEF**</u>

26   <u>**FRAUD**</u>

27   [AGAINST SINNARAJAH AND H&S]

28   73.    Plaintiff realleges and incorporates by reference herein all of the allegations in the

12

1    preceding paragraphs as though set forth in full herein.

2    74.    SINNARAJAH & H&S are jointly and severally liable to Plaintiff for fraud.

3    75.    The Lease provides that H&S will be liable for "any loss or expense, or any loss of

4           profit, arising from any delay or failure in Delivery to LESSEE" if it "arises as a direct

5           consequence of the willful misconduct of LESSOR." The conduct of H&S described

6           above constitutes "willful misconduct."

7    76.    As a direct consequence and proximate result of SINNARAJAH's and H&S's fraud and

8           willful misconduct, Plaintiff has suffered the following injuries and losses:

9               a.  The $280,000 deposit has not been returned to Plaintiff.

10              b.  Despite great efforts to secure the lease of an alternative aircraft, Plaintiff was

11                  unable to do so within the strict time constraints imposed by the Turkish civil

12                  aviation authority. Plaintiff's failure to secure the lease of the Subject Aircraft

13                  caused the Turkish civil aviation authority to suspend Plaintiff's license on or

14                  about November 20, 2007.

15              c.  On November 29, 2007, Air India terminated the lease agreement with Plaintiff

16                  based on Plaintiff's failure to provide the Subject Aircraft under lease, and

17                  claimed compensation from Plaintiff.

18              d.  As of December 5, 2007, Plaintiff had paid Air India $150,000 as compensation.

19              e.  As of December 11, 2007, Air India was claiming an additional $604,439 from

20                  Plaintiff as compensation.

21              f.  Plaintiff will incur the cost of regaining its license, estimated at about $100,000.

22              g.  Plaintiff has lost and will continue to lose substantial profits that it would have

23                  earned from conducting flight operations for Air India with the Subject Aircraft,

24                  in an amount to be proved at trial.

25              h.  As of December 5, 2007, Plaintiff has had to pay approximately $100,000 to

26                  charter aircraft to carry passengers from Istanbul to Kuwait. This to replace the

27                  capacity that Plaintiff has lost as a result of the suspension of its license.

28    77.    Plaintiff has suffered and will continue to suffer other losses and expenses, including

1    loss of profit, arising from the delay and failure in delivery of the Subject Aircraft to

2    Plaintiff.

3    78.    All of the losses and expenses, including loss of profit, suffered by Plaintiff were

4    foreseeable by SINNARAJAH and H&S. Plaintiff had informed SINNARAJAH and

5    H&S that such losses would occur if the Subject Aircraft was not leased to Plaintiff.

6    79.    SINNARAJAH's and H&S's conduct was fraudulent and oppressive. Their plan was

7    and is to swindle Plaintiff out of the $280,000 deposit, knowing that they have no right

8    to it whatsoever. This Court should send a strong message that such conduct will not be

9    tolerated by awarding substantial punitive damages against them, jointly and severally.

10    80.    Plaintiff did not cause or contribute by act or omission to the injuries or losses alleged

11    herein.

12    **THIRD CLAIM FOR RELIEF**

13    **COMMON COUNTS**

14    [AGAINST SINNARAJAH AND H&S]

15    81.    Plaintiff realleges and incorporates by reference herein all of the allegations in the

16    preceding paragraphs as though set forth in full herein.

17    82.    SINNARAJAH and H&S are jointly and severally liable to Plaintiff for the return of the

18    $280,000 deposit under all of the common counts, including but not limited to debt,

19    money had and received, open book account, and account stated.

20    83.    Plaintiff did not cause or contribute by act or omission to the injuries or losses alleged

21    herein.

22    **FOURTH CLAIM FOR RELIEF**

23    **UNJUST ENRICHMENT**

24    [AGAINST SINNARAJAH AND H&S]

25    84.    Plaintiff realleges and incorporates by reference herein all of the allegations in the

26    preceding paragraphs as though set forth in full herein.

27    85.    SINNARAJAH and H&S have been unjustly enriched by the $280,000 deposit which

28    they obtained by fraud.

86. An equitable lien for the benefit of Plaintiff should be imposed on the $280,000 deposit.

87. Plaintiff did not cause or contribute by act or omission to the injuries or losses alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief against SINNARAJAH and H&S, jointly and severally:

A. Judgment in the amount of Two Hundred Eighty Thousand Dollars ($280,000) based on all three Claims For Relief.

B. Prejudgment interest thereon from November 8, 2007.

C. An equitable lien on the $280,000 deposit.

D. In addition, compensatory damages in the amount of at least One Million Dollars ($1,000,000) based on the Second Claim For Relief for Plaintiff's losses and expenses, including loss of profit, arising from the delay and failure in delivery of the Subject Aircraft to Plaintiff arising from H&S's and SINNARAJAH's fraud and willful misconduct, in an amount to be proved at trial.

E. Punitive damages for fraudulent and oppressive conduct.

F. Attorney's fees pursuant to the Lease.

G. Costs of this action.

H. Such alternative or further relief that this court deems just and appropriate in accordance with Rule 54(c) of the Federal Rules of Civil Procedure.

Dated:  December 26, 2007          STEPHEN L. JOSEPH

Attorney for Plaintiff

## <u>VERIFICATION</u>

I, Nurullah Bilgen, declare as follows:

1. I am a Vice President and an officer of the Plaintiff in this action, ALTIN HAVAYOLU TASIMACILIGI TURIZM VE TIC. A.S., which does business as "GOLDEN INTERNATIONAL AIRLINES."

2. I have read the foregoing Verified Complaint.

3. I declare under penalty of perjury under the laws of the United States of America that the factual allegations in the foregoing Verified Complaint are true and correct to the best of my knowledge and belief.

4. I am authorized by applicable corporate laws of Turkey to execute this Verification.


Executed on December 26 , 2007


NURULLAH BILGEN

---
16
**VERIFIED COMPLAINT**

1

## DEMAND FOR JURY TRIAL

2

Plaintiff demands a jury trial on all issues triable of right, as provided by Rule 38 of the

3

Federal Rules of Civil Procedure.

4

5

Dated:   December 26, 2007          STEPHEN L. JOSEPH

6

7

8

9

Attorney for Plaintiff

10

11

12

## CERTIFICATION PURSUANT TO CIVIL L.R. 3-16

13

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

14

named parties, there is no such interest to report.

15

16

Dated:   December 26, 2007          STEPHEN L. JOSEPH

17

18

19

20

Attorney for Plaintiff

21

22

23

24

25

26

27

28