1  NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
   PATRICK J. RICHARD (SBN 131046)
2  prichard@nossaman.com
   50 California Street, Thirty-Fourth Floor
3  San Francisco, California 94111-4707
   Telephone: (415) 398-3600
4  Facsimile: (415) 398-2438

5  Attorneys for Defendants
   SIVAKUMAR SINNARAJAH,
6  a/k/a MANO SINNARAJAH;
   H&S GROUP OF COMPANIES, INC.

7

8

9

10               UNITED STATES DISTRICT COURT

11     NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

12

13  ALTIN HAVAYOLU TASIMACILIGI TURIZM      Case No:    CV 07-6475 EDL
    VE TIC, A.S., a corporation organized under the
14  laws of Turkey, doing business as GOLDEN        ASSIGNED FOR ALL PURPOSES TO:
    INTERNATIONAL AIRLINES,            THE HONORABLE  ELIZABETH D. LAPORTE
15
                   Plaintiff,          **DECLARATION OF SIVAKUMAR
16                                     SINNARAJAH IN SUPPORT OF
           vs.                         DEFENDANTS' NOTICE OF MOTION
17                                     AND MOTION TO DISMISS, OR IN THE
    SIVAKUMAR SINNARAJAH, an individual,    ALTERNATIVE, TO CHANGE VENUE**
18  also known as MANO SINNARAJAH; H&S
    GROUP OF COMPANIES, INC., a Florida    [FRCP 12(b)(2) and 12(b)(3); 28 U.S.C.
19  corporation; and DOES 1 to 10 inclusive,,   §1404(a) and §1406(a)]
20
                   Defendants.          Action Filed:
21
                                       Date:  March 11, 2008
22                                     Time:  9:00 a.m.
                                       Ctrm:  E
23

24                                     **PART 3 OF 3**

25

26

27

28

---

**DECLARATION OF SIVAKUMAR SINNARAJAH IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS,
OR IN THE ALTERNATIVE, TO CHANGE VENUE**

**EXHIBIT E**

**CERTIFICATE OF INSURANCE (FOR MANUFACTURER)**

**[Required?]**

[DATE]

To:  THE BOEING COMPANY
Post Office Box 3707
Mail Stop 13-57
Seattle, Washington 98124, U.S.A.
U.S.A.
Attention:    Senior Director, Risk Management & Insurance

cc:  BOEING COMMERCIAL AIRPLANES
P.O. Box 3707
Mail Stop 2 1-34
Seattle, Washington 98124-2207, U.S.A.
Attention:    Vice President - Contracts

**NAMED INSURED:   ALTIN HAVAYOLU TASIMACILIGI TURIZM VE TIC. A.S.
(GOLDEN INTERNATIONAL AIRLINES)**

We hereby certify that in our capacity as Brokers to the Named Insured, the following described insurance is in force on this date:

**Insurer:**            **Policy No:**              **Participation:**

POLICY PERIOD:

From [date and time of inception of the Policy(ies)] to [date and time of expiration]

GEOGRAPHICAL LIMITS:

Worldwide, subject to standard market exceptions

AIRCRAFT INSURED:

Aircraft owned or operated by the Named Insured which is subject to the Purchase Agreement No. 2079 dated November 17. 1997 entered into between The Boeing Company and International Lease Finance Corporation ("IISG")

102

AIRCRAFT TYPE:

    B757-200

AIRCRAFT SERIAL NUMBER:

    28484 (hereinafter "Aircraft")

COVERAGES:

1.    Aircraft "all risks" Hull (Ground and Flight)

2.    Aircraft Hull War and Allied Perils (as per LSWSSS.C, its successor wording, or equivalent coverage which may be provided by a sovereign government and/or the international aviation insurance market)

3.    Airline Liability Including, but not limited to, Bodily Injury, Property Damage, Aircraft Liability, Liability War Risks, Passenger Legal Liability, Premises/Operations Liability, Completed Operations/Products Liability, Baggage Legal Liability (checked and unchecked), Cargo Legal Liability, Contractual Liability and Personal Injury.

    The above-referenced Airline Liability insurance coverage is subject to War and Other Perils Exclusion Clause (AVN48B or its successor wording) but all sections other than section (b) are reinstated as per AVNS2E, or their successor endorsements.

LIMITS OF LIABILITY:

    To the fullest extent of the Policy limits that the Named Insured carries at the time of delivery of the Aircraft, and thereafter at the inception of each policy period, but in any event no less than the following:
Combined Single Limit Bodily Injury and Property Damage:US$525,000,000 any one occurrence (or in the aggregate with respect to product liability and war risks as applicable).

    In regard to Personal Injury coverage, limits are US$25,000,000 any one offense/aggregate.

DEDUCTIBLES / SELF-INSURANCE:

    Any deductible and/or self-insurance amount under the liability insurance (other than standard market deductibles) are to be disclosed to and agreed by Boeing.

SPECIAL PROVISIONS MPLICABLE TO BOEING:

    It is certified that Insurers are aware of the terms and conditions of the Aircraft General

Insurers have agreed to the following with respect to the referenced Aircraft:

A.   In regard to Aircraft "all risks" Hull Insurance and Aircraft Hull War and Allied Perils Insurance, Insurers agree to waive all rights of subrogation or recourse against Boeing in accordance with the AGTA which was incorporated by reference into the applicable purchase agreement.

B.   In regard to Airline Liability Insurance, Insurers agree:

(1)   To include Boeing as an additional insured in accordance with Customer's undertaking in Article 8.2.1 of the AGTA which was incorporated by reference into the applicable purchase agreement.

(2)   To provide that such insurance will be primary and not contributory nor excess with respect to any other insurance available for the protection of Boeing;

(3)   To provide that with respect to the interests of Boeing, such insurance shall not be invalidated or minimized by any action or inaction, omission or misrepresentation by the Insured or any other person or party (other than Boeing) regardless of any breach or violation of any warranty, declaration or condition contained in such policies;

(4)   To provide that all provisions of the insurance coverages referenced above, except the limits of liability, will operate to give each Insured or additional insured the same protection as if there were a separate Policy issued to each.

C.   In regard to all of the above referenced policies:

(1)   Boeing will not be responsible for payment, set-off, or assessment of any kind or any premiums in connection with the policies, endorsements or coverages described herein;

(2)   If a policy is canceled for any reason whatsoever, or any substantial change is made in the coverage which affects the interests of Boeing or if a policy is allowed to lapse for nonpayment of premium, such cancellation, change or lapse shall not be effective as to Boeing for thirty (30) days (in the case of war risk and allied perils coverage seven (7) days after sending, or such other period as may from time to time be customarily obtainable in the industry) after receipt by Boeing of written notice from the Insurers or the authorized representatives or Broker of such cancellation, change or lapse; and



(3)    For the purposes of the Certificate, "Boeing" is defined as The Boeing Company, its divisions, subsidiaries, affiliates, the assignees of each and their respective directors, officers, employees and agents.

(4)    If third party war risk and allied perils coverage or indemnification has been obtained by Customer from a sovereign government and not the commercial insurance market, Customer will advise Boeing.

Subject to the terms, conditions, limitations and exclusions of the relative policies.

(signature)

(typed name)

(title)



## EXHIBIT F

## AVIATION AUTHORITY UNDERTAKING LETTER

[Date]

To:    H&S GROUP COMPANIES, INC
9749 SW 111th Terr.
Miami, FL 33176

Dear Sirs:

We, the _____ (the "**Aviation Authority**") undertake that:

1.     No cancellation, alteration or change in the registration of the Aircraft or recordation of liens will be made until receipt of written consent to such specified change from LESSOR.

2.     On written request of LESSOR (which will include fax), the Aviation Authority will promptly de-register the Aircraft and provide such confirmation as is requested by LESSOR together with any other confirmation or information LESSOR may require to enable the Aircraft to be re-registered in any other country or state.

3.     On written request of LESSOR (which will include fax) the Aviation Authority will release, remove or cancel all liens it may have over the Aircraft, and will acknowledge in doing so that all liability for such liens as discharged are for the sole account of LESSEE.

4.     The Aviation Authority will not allow the registration, use or operation of the Aircraft for any purpose other than the category of fare paying passenger transportation.

5.     The Aviation Authority will consent to the export of the Aircraft on the termination of the Lease Term or at LESSOR's written request.

Sincerely,

## EXHIBIT G

## ESTOPPEL AND ACCEPTANCE CERTIFICATE

ALTIN HAVAYOLU TASIMACILIGI TURIZM VE TIC. A.S. ("LESSEE"), a company organized under the laws of Turkey does hereby represent, acknowledge, warrant and agree as follows:

1.      LESSEE and H&S GROUP COMPANIES, INC. ("LESSOR") have entered into an Aircraft Lease Agreement dated as of _____, 2007 (hereinafter referred to as the "Lease"). Words used herein with capital letters and not otherwise defined will have the meanings set forth in the Lease.

2.      LESSEE has this ____ day of_____ _____ (Time: _____) at _____received from LESSOR possession of:

   (a)      One (1) B757-200 aircraft bearing Manufacturer's serial number 28484 and Turkish registration mark _____ , together with Two (2) Pratt & Whitney PW2037 engines bearing manufacturer's serial numbers _____ and _____ (each of which has 750 or more rated take-off horsepower) and an APU bearing part number _____ and manufacturer's serial number _____, all in airworthy condition.

   (b)      All Aircraft Documentation, including the usual and customary manuals, logbooks, flight records and historical information regarding the Aircraft, Engines, APU and Parts.

   (c)      The loose equipment set forth in the list of Loose Equipment attached hereto.

3.      The Aircraft had the following seating configuration at Delivery:

   _____ first      _____ business      _____ coach

4.      Lower crew rest (LD-MCR) is / is not installed (circle one) at Delivery.

5.      The Airframe, Engines, APU and Parts had the following hours/cycles at Delivery:

   (a)      Airframe:

Maximum gross takeoff weight:      __ _____
Total hours: _____
Total cycles: _____     pounds/kilos (circle

107



(b)    Operating thrust of Engines at Delivery:

_____    pounds

(c)    Engine #1 Information:

|  | Serial No | Total Hours | Total Cycles |
|---|---|---|---|
| ENGINE #1: |  |  |  |

| ENGINE #1 LIFE LIMITED PART NAME | Part Number | Cycles Remaining to Next Life-Limited Part Removal |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

(d)    Engine No. 2 Information:

|  | Serial No | Total Hours | Total Cycles |
|---|---|---|---|
| ENGINE #2: |  |  |  |

| ENGINE #1 LIFE LIMITED PART NAME | Part Number | Cycles Remaining to Next Life-Limited Part Removal |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

(e)

Total hours: _____

Total cycles: _____

_____ hours/ _____ cycles since last hot section refurbishment

_____ hours/ _____ cycles remaining on APU life-limited Parts

(f)    Landing Gear:

| Position | Serial No. | Total Hrs/Cycles/ Days | Hrs/Cycles/ since last Overhaul | Date of last Overhaul |
|----------|------------|------------------------|---------------------------------|-----------------------|

Nose

Left Main

Right Main

6.     The amount of fuel on board at Delivery is _____
pounds/gallons/kilos of fuel (circle one).

7.     The Agreed Value of the Aircraft is US$_____

8.     All of the foregoing has been delivered and accepted on the date set forth above to LESSEE's full satisfaction and pursuant to the terms and provisions of the Lease.

9.     The Aircraft, Engines, APU, Parts and Aircraft Documentation as described in the Lease have been fully examined by LESSEE and have been received in a condition fully satisfactory to LESSEE and in full conformity with the Lease in every respect.

10.     The Lease is in full force and effect, LESSOR has fully, duly and timely performed all of its obligations of every kind or nature thereunder and LESSEE has no claims, offsets, deductions, set-off or defenses of any kind or nature in connection with the Lease.

11.     LESSOR's Lender may rely upon all of the foregoing in granting substantial financial accommodations to LESSOR and LESSEE understands and agrees that any funds being advanced by LESSOR's Lender will be made in reliance upon the foregoing.

12.     LESSEE has obtained all required permits, authorizations, licenses and fees of the State of Registration or any Government Entity thereof necessary in order for LESSEE to operate the Aircraft as permitted by the terms of the Lease.

Dated on the date set forth above

ALTIN HAVAYOLU TASIMACILIGI TURIZM
VE TIC. A.S.


By:           _____
Printed Name: _____
 Title:       _____

109

ATTACHMENTS:

1.     List of discrepancies
2.     List of Aircraft Documentation
3.     Current Aircraft layout passenger arrangement (LOPA)
4.     Incident/accident letter
5.     Dent and damage chart
6.     List of loose equipment
7.     List of free-of-charge kits
8.     Engine disk sheets
9.     Engine power assurance test conditions and results
10.    Engine trend data
11.    Technical Evaluation Report (in the form of Exhibit P)

## EXHIBIT H
## OPINION OF COUNSEL

TO BE GIVEN BY INDEPENDENT OUTSIDE COUNSEL OF LESSEE OR OTHER LAWYERS ACCEPTABLE TO LESSOR

To:    H&S GROUP COMPANIES, INC.
9749 SW 111th Terr.
Miami, FL 33176

Gentlemen:

This opinion is furnished to you pursuant to Article 7.1 of the Aircraft Lease Agreement dated as of June ____, 2006 (the "Lease") between ALTIN HAVAYOLU TASIMACILIGI TURIZM VE TIC. A.S. ("LESSEE") and H&S GROUP COMPANIES, INC. ("LESSOR"). Defined terms in this opinion are used herein as defined in the Lease.

I have acted as counsel for LESSEE in connection with the preparation, execution and delivery of the Lease.

In that connection I have examined each of the following:

(a)    The Lease and Side Letters thereto, the Estoppel and Acceptance Certificate and the power of attorney provided by LESSEE in which, among other things, LESSEE authorizes LESSOR to take action in LESSEE's name to deregister the Aircraft after termination of the Lease due to an Event of Default under the Lease or for termination of the Lease due to any other reason (together, the "Lease Documents")

(b)    The charter of LESSEE and all amendments thereto;

(c)    Such other documents, agreements and instruments, and such treaties, laws, rules, regulations, decrees and the like, as I have deemed necessary as a basis for the opinions hereinafter expressed.

(d) All of the agreements and any amendments thereto between LESSEE and all other lessors and lenders of LESSEE covering other aircraft operated by LESSEE on which the Engines can be installed.]

Based upon the foregoing and having regard for legal considerations which I deem relevant, I am of the opinion that:

1.    LESSEE is a company validly existing and in good standing under the Laws of Turkey. It has the power and authority to carry on its business as presently conducted and to perform its obligations under the Lease Documents.

2.    No authorization, approval, consent, license or order of, or registration with, or



the giving of notice to the Aviation Authority or any other regulatory body or authority is required for the valid authorization, execution, delivery and performance by LESSEE of the Lease Documents.

     3.    The Lease Documents have each been duly authorized, executed and delivered by LESSEE. Each such instrument is a valid and binding obligation of LESSEE, enforceable in accordance with their terms except as enforceability may be limited by bankruptcy, insolvency, reorganization or other Laws of general application affecting the enforcement of creditors' rights.

     4.    The execution and delivery of the Lease Documents, the consummation by LESSEE of the transactions contemplated therein and compliance by LESSEE with the terms and provisions thereof do not and will not contravene any Law applicable to LESSEE, or result in any breach of or constitute any default under or result in the creation of any lien, charge or encumbrance upon any property of LESSEE, under any indenture, mortgage, chattel mortgage, deed of trust, conditional sales contract, bank loan or credit agreement, charter, by-law or other agreement or instrument to which LESSEE is a party or by which LESSEE or its properties or assets may be bound or affected.

     5.    [Describe the process in Turkey with respect to registration of the Aircraft in the name of LESSOR and any other steps required or recommended in Turkey in order to protect the interests of LESSOR in the Aircraft]. Such registration of the Aircraft is not inconsistent with, and would not result in the loss of, LESSOR's title to and ownership of the Aircraft. Except for the foregoing, no other filing or recording of any instrument or document or any other acts are necessary or advisable under the laws of Turkey to protect LESSOR's title to and ownership of the Aircraft. [In the opinion given at Delivery, also confirm that the Aircraft is registered in the name of LESSOR.]

     6.    Except for any filing or recording that may be required with the [NAME OF AIRCRAFT REGISTER] and except for [DESCRIBE SUCH OTHER FILINGS OR RECORDINGS], no filing or recording of any instrument or document (including the filing of any financial statement) is necessary under the laws of Turkey in order for the Lease to constitute a valid and perfected lease of record relating to the Aircraft, it being understood that such counsel expresses no opinion as to the nature of LESSOR's title to the Aircraft on the Delivery Date. [In opinion given at Delivery, also confirm that the filings and other steps described have been accomplished.]

     7.    Except for [DESCRIBE ANY TRANSLATION, NOTARIZATION OR OTHER REQUIREMENTS], none of the Lease Documents needs to be translated, notarized, legalized, apostilled or consularized as a condition to the legality, validity, filing, enforceability or admissibility in evidence thereof. Each of the Lease Documents is in a proper form under the Laws of Turkey for the enforcement thereof in Turkey, without any further action on the part of any party other than the commencement of court proceedings in Turkey.

     8.    LESSEE will not be required to obtain any licenses for importation and ferrying of the Aircraft into Turkey. LESSEE has complied with all import and customs formalities in



Turkey with respect to the Aircraft.

9. LESSEE holds all licenses, certificates and permits from applicable governmental authorities in Turkey necessary for the conduct of its business as a certificated air carrier and performance of its obligations under the Lease Documents.

10. To my knowledge, there are no suits or proceedings pending or threatened against LESSEE before any Government Entity against or affecting LESSEE which, if adversely determined, would have a material adverse effect on the financial condition or business of LESSEE or its ability to perform under the Lease Documents, except as described in the filings provided to LESSOR pursuant to Article 20 of the Lease.

11. Under the laws of Turkey, LESSEE will not be required to make or deduct any withholding or other Tax from any payment it may make under the Lease Documents.

12. The obligations of LESSEE under the Lease Documents are direct, general and unconditional obligations of LESSEE and rank or will rank at least p~jj passu with all other present and future unsecured and unsubordinated obligations (including contingent obligations) of LESSEE, with the exception of such obligations as are mandatorily preferred by law.

13. LESSEE, under the laws of Turkey or of any other jurisdiction affecting LES SEE, is subject to private commercial law and suit. Neither LESSEE nor its properties or assets have the right of immunity from suit or execution on the grounds of sovereignty in such jurisdictions and the performance by LESSEE of its obligations under the Lease Documents constitute commercial acts done for commercial purposes.

14. On termination of the Lease, LESSOR would be entitled to repossess the Aircraft and, without additional fees or duties, export it from Turkey. [The aviation authority in Turkey will not issue a letter to LESSOR at Delivery confirming that the Aviation Authority will deregister the Aircraft at the request of LESSOR.]

15. LESSOR is not required by Turkey to obtain any approval, license or consent (including without limitation any exchange control approval) in order to remit to LESSOR of any amount payable under the Lease Documents.

16. There is no applicable usury or interest limitation Law in Turkey which may restrict the recovery of payments in accordance with the Lease Documents.

17. LESSOR will not violate any Law or become liable to any tax in Turkey by reason of entering into or performing its obligations under the Lease Documents and it is not necessary to establish a place of business in Turkey in order to enforce any provisions of the Lease Documents.

18. The choice of California Law to govern the Lease Documents will be upheld in any action in the courts of Turkey. Any judgment given by United States or California courts would be recognized and accepted by the courts in Turkey.



19.    [DESCRIBE STATUS OF CAPE TOWN CONVENTION IN COUNTRY], for example:

Turkey has ratified the Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters specific to Aircraft Equipment which were adopted on November 16, 2001 at a diplomatic conference held in Cape Town, South Africa (commonly known as the "Cape Town Convention")] [without any reservations or declarations in respect thereto OR with the following reservations and declarations in respect thereto] and the Lease and the other Operative Documents and the rights created thereby are valid, legal and binding thereunder and conform to the terms and conditions thereof.

or

Turkey[is not] [is] a signatory of, [and] [but] has not yet ratified, the Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters specific to Aircraft Equipment. [describe the ratification process and status of ratification in Turkey]

Very truly yours,

## EXHIBIT I

## FORM OF POWER OF ATTORNEY

ALTIN HAVAYOLU TASIMACILIGI TURIZM VE TIC. A.S. ("TACV") hereby irrevocably appoints HS Group ("HSG"), a corporation located in _____U.S.A., as TACV's true and lawful attorney so that HSG may take any of the following actions in the name of and for TACV with respect to the B757-200ER aircraft bearing manufacturer's serial number 28484 (the "Aircraft") leased by HSG to TACV pursuant to an Aircraft Lease Agreement dated as of ____, 2007(the "Lease"):

     1.     Pursuant to the Lease, TACV has procured and is maintaining insurances for the Aircraft. HSG has been named sole loss payee on the all risk hull and war risk insurances for the Aircraft. In the event of a total loss or constructive total loss of the Aircraft, HSG is entitled to receive insurance proceeds in an amount specified in Article 19 of the Lease, a copy of which is attached. HSG may take all action and sign all documents otherwise required to be performed by TACV, including execution on behalf of TACV of an appropriate form of discharge/release document, in order for HSG to collect such insurance proceeds.

     2.     In the exercise of the rights of HSG under the Lease to recover the Aircraft from TACV and Turkey after termination of the Lease due to an Event of Default under the Lease or for termination of the Lease due to any other reason, HSG may take all action otherwise required to be performed by TACV before the authorities and courts in Turkey in order to cause the Aircraft to be repossessed by HSG, deregistered from the [NAME OF REGISTRY] and exported from Turkey.

     3.     In the exercise of the rights mentioned in paragraphs 1 and 2, HSG may make any declarations or statements and sign any public or private documents which may be considered necessary or appropriate.

     4.     HSG may delegate the powers conferred hereby, in whole or in part, to any individual(s), including but not limited to employees of HSG or legal counsel in Turkey.

     HSG is empowered to determine in its sole discretion when to exercise the powers conferred upon HSG pursuant to this Power of Attorney. Any person, agency or company relying upon this Power of Attorney need not and will not make any determination or require any court judgment as to whether an Event of Default has occurred under the Lease or whether the Lease has been terminated. TACV hereby waives any claims against (a) any person acting on the instructions given by HSG or its designee pursuant to this Power of Attorney and (b) any person designated by HSG or an officer of HSG to give instructions pursuant to this Power of Attorney. TACV also agrees to indemnify and hold harmless any person, agency or company which may act in reliance upon this Power of Attorney and pursuant to instructions given by HSG or its designee.

     This Power of Attorney is irrevocable until the Aircraft has been returned to the possession of HSG, deregistered and exported from the Turkey.



ALTIN HAVAYOLU TA5IMACILIOI TURIZM VE TIC. A.5. has made and delivered this Power of Attorney on _____ in _____

ALTIN HAVAYOLU TASIMACILIGI TURIZM
VE TIC. A.S.


By: _____
Printed Name: _____
Title: _____

116

## EXHIBIT J

## FORM OF CAPE TOWN POWER OF ATTORNEY

Form of Irrevocable Deregistration and Export Request Authorization (Annex referred to in Article 25 of the consolidated text of the Cape Town Convention)

[Date]

To:    *[name of Registry Authority]*

Re:    Irrevocable Deregistration and Export Request Authorization

The undersigned is the registered operator of the B757-200ER aircraft bearing manufacturer's serial number 28484 and Turkish registration mark _____ (together with all installed, incorporated or attached accessories, parts and equipment, the **"Aircraft").**

This instrument is an irrevocable deregistration and export request authorization issued by the undersigned in favor of H&S GROUP COPANIES INC. as lessor (the **"Authorized** Party") under the authority of Article 25 of the consolidated text of the Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters specific to Aircraft Equipment which were adopted on November 16, 2001 at a diplomatic conference held in Cape Town, South Africa (the **"Cape Town Convention").** In accordance with that Article, the undersigned hereby requests:

(a)    recognition that the Authorized Party or the person it certifies as its designee is the sole person entitled to:

(1) procure the deregistration of the Aircraft from the registry of aircraft maintained by *[name of Registry Authority]* for the purposes of Chapter III of the Convention on International Civil Aviation, signed at Chicago, on 7 December 1944; and

(2) procure the export and physical transfer of the aircraft from *[insert country];* and

(b)    confirmation that the Authorized Party or the person it certifies as its designee may take the action specified in clause (a) above on written demand without the consent of the undersigned and that, upon such demand, the authorities in *[insert country]* shall cooperate with the Authorized Party with a view to the speedy completion of such action.

The rights in favor of the Authorized Party established by this instrument may not be revoked by the undersigned without the written consent of the Authorized Party.

Please acknowledge your agreement to this request and its terms by the appropriate notation in the space provided below and lodge this instrument in the aircraft registry maintained

117



by *[name of Registry Authority]*.

ALTIN HAVAYOLU TASIMACILIGI TURIZM
VE TIC. A.S.

By: _____

Printed Name: _____

Title: _____

Agreed to and lodged on the date specified below.

[NAME OF REGISTRATION AUTHORITY]

By:

Its: _____

Date: _____

118

## EXHIBIT K

## RETURN ACCEPTANCE RECEIPT

Date: _____

    1.    ALTIN HAVAYOLU TASIMACILIGI TURIZM VE TIC. A.S. ("LESSEE") and HS Group ("LESSOR") have entered into an Aircraft Lease Agreement dated as of _____, 2007 (the "Lease"). Words used herein with capital letters and not otherwise defined will have the meanings set forth in the Lease.

    2.    LESSOR has this ___ day of_____ _____ (Time: _____) at _____ received from LESSEE possession of:

    (a)    One (1) B757-200ER Aircraft bearing Manufacturer's serial number 28484, together with Two (2) Pratt & Whitney PW2037 Engines bearing manufacturer's serial numbers _____ and _____, an APU bearing manufacturer's serial number ____, and all Parts attached thereto and thereon in an airworthy condition and

    (b)    All Aircraft Documentation, including the usual and customary manuals, logbooks, flight records and historical information regarding the Aircraft, Engines, APU and Parts, as listed in the Document Receipt attached hereto.

3.    The Aircraft had the following seating configuration at return:
first    business    coach

4.    Lower crew rest (LD-MCR) is / is not installed (circle one) at return.

5.    The Airframe, Engines, APU and Parts had the following hours/cycles at return:

    (a)    Airframe:

    Maximum gross takeoff weight: _____ pounds/kilos (circle one)

    Total hours: _____    Total cycles: _____

    (b)    Operating thrust of Engines at return:

    _____ pounds

    (c)    Engine #1 Information:

|  | Serial No | Total Hours | Total Cycles |
|---|---|---|---|
| ENGINES #1 |  |  |  |
|  |  |  |  |

| ENGINE #1 LIFE-LIMITED PART NAME | Part Number | Cycles Remaining to Next Life-limited Part Removal |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

(d)    Engine No. 2 Information:

|  | Serial No | Total Hours | Total Cycles |
|---|---|---|---|
| ENGINES #2 |  |  |  |
|  |  |  |  |

| ENGINE #2 LIFE-LIMITED PART NAME | Part Number | Cycles Remaining to Next Life-limited Part Removal |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

(e)        APU:

Part number:        _____
Serial number:      _____
Total hours:        _____
Total cycles:       _____

_____ hours/ _____ cycles since last hot section refurbishment

_____ hours/ _____ cycles remaining on APU life-limited Parts

(f)        Landing Gear:

| Position | Serial No. | Total Hrs/Cycles/ Days | Hrs/Cycles/Days since last Overhaul | Date of last Overhaul |
|---|---|---|---|---|
| Nose |  |  |  |  |
| Left Main |  |  |  |  |
| Right Main |  |  |  |  |

120

6.  The amount of fuel on board at return is _____ pounds/gallons/kilos of fuel (circle one).

7.  Other technical information regarding the Aircraft and its components are correctly set forth on the Technical Evaluation Report (in the form of Exhibit P) attached hereto.

8.  With reference to Article 13.9 of the Lease regarding reimbursement from the Reserves after return of the Aircraft:

_____  There are no claims for reimbursement from the Reserves which will be submitted after the date hereof

or

_____  Claims for reimbursement from the Reserves will be submitted after the date hereof for the following:

Type of Work                    Estimated Invoice Amount

9.  LESSEE confirms that it has delivered to LESSOR all free-of-charge kits for the Aircraft received by LESSEE.

10.  The above specified aircraft, engines and documentation are hereby accepted by LESSOR subject to (a) the provisions of the Lease and (b) correction by LESSEE (or procurement by LESSEE at LESSEE's cost) as soon as reasonably possible of the discrepancies specified in the list attached.

11.  Subject to the following paragraph, the leasing of the Aircraft by LESSOR to LESSEE pursuant to the Lease is hereby terminated without prejudice to LESSEE's continuing obligations under the Lease including, without limitation, paragraph 11(b) above and Articles 16 and 17.

12.  LESSEE represents and warrants that during the term of the Lease all maintenance and repairs to the Airframe and Engines were performed in accordance with the requirements contained in the Lease. LESSEE further confirms that all of its obligations under the Lease whether accruing prior to the date hereof or which survive the termination of the Lease by their terms and accrue after the date hereof, will remain in full force and effect until all such obligations have been satisfactorily completed.

13.  This Return Acceptance Receipt is executed and delivered by the parties in _____ [place].

IN WITNESS WHEREOF, the parties hereto have caused this Return Acceptance Receipt

to be executed in their respective company names by their duly authorized representatives as of the day and year first above written.

H&S Group

ALTIN HAVAYOLU TASIMACILIK
TURIZM VE TIC. A.S.

By:

By:

Printed Name: _____

Printed Name: _____

Its: _____

Its:___ _____

ATTACHMENTS:

1. List of discrepancies
2. List of Aircraft Documentation
3. Current Aircraft layout passenger arrangement (LOPA)
4. Incident/accident letter
5. Dent and damage chart
6. List of loose equipment
7. List of free-of-charge kits
8. Engine disk sheets
9. Engine power assurance test conditions and results
10. Engine trend data
11. Technical Evaluation Report (in the form of Exhibit P)

# EXHIBIT L
# MONTHLY REPORT

### (SEE FOLLOWING SHEET)
## MONTHLY AIRCRAFT UTILIZATION AND STATUS REPORT

Page 1 of __

Report Due Date: _____

To:  HS Group

**From:   ALTIN HAVAYOLU
TASIMACILIGI TURIZM VE
TIC. A.S.**

Contact: _____     Fax:_____

AIRCRAFT TYPE:    **B757-200ER**

ENGINE TYPE:**Pratt & Whitney PW2037**     **REGISTRATION:** _____

SERIAL NUMBER:    **28484**     MONTH OF: _____

NOTE:    PLEASE RECORD TIME IN HOURS AND MINUTES NOT DECIMALS.

| | |
|---|---|
| Aircraft Total Time Since New As Of Last Month: | Hours:          Mm: |
| Aircraft Total Time Since New: | Hours:          Mm: |
| Aircraft Total Cycles Since New: | Cycles: |
| Airframe Hours Flown During Month: | Hours:          Mm: |
| Airframe Cycles/Landings During Month: | Cycles: |

Monthly Aircraft Utilization and Status Report
From: ALTIN HAVAYOLU TA5IMACILIOI TURIZM VE TIC. A.5.          Page 2 of

| HOURS OR CYCLES FLOWN DURING MONTH (if applicable) | US$ PER HOUR OR CYCLE (if applicable) | RESERVES (if particular type of Reserves calculated by calendar month, list monthly amount) |
|---|---|---|
| | | |

123



| TOTAL AIRFRAME | | | | | |
|---|---|---|---|---|---|
| TOTAL LANDING GEAR: | Month: | | | | |
| TOTAL APU: | Hrs: | x | | | |
| Original Engine Serial Number: | Hrs:        Mim: | x | | = | |
| | Cycles (for Engine LLP Reserves): | x | | = | |
| Original Engine Serial Number: | Hrs:        Mm: | x | | = | |
| | Cycles (for Engine LLP Reserves): | x | | = | |
| **TOTAL AMOUNT OF RESERVES (USS) PAID THIS MONTH:** | | | | | USS |

Monthly Aircraft Utilization and Status Report
From: ALTIN HAVAYOLU TASIMACILIGI TURIZM VE TIC. A.S

**ENGINE SERIAL NUMBER: _____**
ORIGINAL POSITION: _____
ACTUAL LOCATION: _____
CURRENT THRUSTING RATE: _____

| Total Time Since New As Of Last Month: | HOURS :/MIN: |
|---|---|
| | |
| Total Time Since New: | |
| Total Cycles Since New: | |
| Hours Flown During Month: | |
| Cycles During Month: | |

**ENGINE SERIAL NUMBER: _____**
ORIGINAL POSITION: _____
ACTUAL LOCATION: _____
CURRENT THRUSTING RATE: _____

| Total Time Since New As Of Last Month: | HOURS :/MIN: |
|---|---|
| | |
| Total Time Since New: | |
| Total Cycles Since New: | |
| Hours Flown During Month: | |
| Cycles During Month: | |

**IMPORTANT:    IF HSG-OWNED ENGINE IS REMOVED OR INSTALLED ON ANOTHER AIRCRAFT, IT MUST BE REPORTED MONTHLY ON THIS FORM.**

124

## EXHIBIT M

## AIRCRAFT DOCUMENTATION

AIRCRAFT RECORDS

1.  Copies of original Certificates delivered by Boeing, such as:
    a. Airworthiness Certificate for Export
    b. Radio installation conformity certificate
    c. Noise limitation certificate
2.  Copies of original Documents delivered by Boeing, such as:
    a. Airworthiness Directive Compliance list
    b. Aircraft inspection report
    c. Readiness Log
    d. Weighing report
3.  Copies of current Certificates:
    a. Airworthiness Certificate
    b. Noise limitation
    c. Radio license
    d. Interior material burn certificates
    e. Certificate of Export
    f. Aircraft deregistration confirmation
    g. Aircraft Registration
4.  Letters signed and stamped by Quality Assurance:
    a. Current aircraft hours and cycles
    b. Current engines hours and cycles
    c. Accident and Incident report
    d. Summary of Maintenance Program
    e. AD compliance during the lease term
5.  Aircraft log books and Readiness Log
6.  Aircraft Hard Time (HT) inspection status
7.  One year forecast for HT inspection
8.  Aircraft Modification status, including service bulletins
9.  Last weighing report prior to redelivery
10. AD compliance report with original signoffs
11. Corrosion Prevention Control Program compliance summary
12. Routine and non-routine job cards of the Return Check
13. Routine and non-routine maintenance work cards for tasks performed during the Lease
    Term that were not repeated at or superseded by the Return Check
14. Past year pilot and maintenance discrepancies
15. Major and Minor structural repairs with applicable approvals
16. Compass Swing report of the last three years
17. Cabin Configuration drawing (LOPA)
18. Emergency equipment location drawing
19. Engineering data package for all modifications

ENGINES RECORDS

1. Last test cell run reports
2. Life-limited Parts status and traceability
3. AD compliance report with original signoffs
4. Engine Modification / service bulletin /inspection report and applicable forms
S. Last heavy maintenance records for each module
6. Engine log books
7. Engine removal history
8. Past year trend monitoring reports
9. Historical borescope reports
10. Engine component report

APU RECORDS

1. APU status (FH, FC, limits)
2. Life-limited Part status and traceability
3. AD compliance report with original signoffs
4. Modification status
S. Last heavy maintenance documents
6. APU logbooks
7. Last test cell report

COMPONENT RECORDS

1. Aircraft component inventory
2. Hard time component inventory
3. All required serviceable tags
4. Landing Gear status with last overhaul and life-limited Part status
S. AD compliance report with original signoffs
6. Modification status



**EXHIBIT P**

**TECHNICAL EVALUATION REPORT**

JMD.REV 9/24/07.2